We're happy to hear argument in our first case, United States v. McCoy, No. 14-4745. Mr. English. Good morning, Your Honor. May it please the Court. I've been appointed by the Court to represent Mr. McCoy. The only issue which I will argue today is the validity of the upward departure at sentencing. I will note parenthetically that my client filed a pro se brief seeking that his conviction be set aside on the grounds of insufficiency of the evidence. And although the Court does not have to, I would ask that in its decision it address that for no other reason than so Mr. McCoy will have closure on the issue. Mr. English, can you speak up just a little bit? You're on the very verge of us not being able to hear you. I think it's the height. Yes, ma'am. And I will say in my case, God had a joke that for a big guy I have a very soft voice which caused drill instructors at one point in my life to laugh, to yell at me a lot trying to develop a command voice. I hope we won't replicate that here. And they were unsuccessful. Your Honors, on November 1st, 1986, the sentencing guidelines went into effect for the express purpose of promoting fairness in sentencing and consistency in sentencing. In other words, to have uniformity at sentencing so similarly situated people would be treated in a similar fashion. As the Court well knows, these guidelines are no longer mandatory. They're advisory. In this case, the probation officer properly determined there was a level 32 offense level, a criminal history category of Roman numeral two, which yielded a guideline range of 135 to 168 months. Well, in some respects, even that level 32 is suspect. The jury found by means of a special verdict that my client was responsible for between 500 grams and five kilos of cocaine hydrochloride or powdered cocaine. That, excuse me, our position was that when the guidelines the probation officer found were based on seven kilos, there actually was double counting at, according to the co-defendant, Mr. Williams, who testified as a prosecution witness at trial, there had been a prior deal where my client gave him three kilos of coke that, or pork bodily, so they returned to him. And then this deal took place for another three kilos, which we respectfully submit is a replacement for those. So the total amount involved should have been four and not seven. And by way of analogy, I would say if I were to go to Sears and buy a lawnmower and take it home and it didn't work, and I took it back to Sears and said, you know, this isn't any good, and they took it and ordered a new one for me and I picked it up a week later, I would have bought one lawnmower, not two. The probation office didn't see it that way. Moreover, approximately six weeks after the sentencing in this case, on November 1st of last year, Amendment 782 of the Guideline ranged by two levels for drug offenses. So if my client had, his Guidelines had been properly computed, he would have been a level 30 based upon four kilos. And if the attorney below, and I don't know why he didn't raise either one of these points, had pointed out that in a few short weeks the Guidelines would change and ask the court to use them early to save a lot of trouble. Has your client filed a 3882 motion to reduce his sentence based on the amendment? No, Your Honor. Does he plan to do so? Yes, Your Honor. I sent a letter to the clerk here in Richmond and asked them to appoint me for that purpose and they said the public defender would be handling that and they would wait until after this appeal was over to deal with that issue. So of course, if the case were remanded, it would be at that time. But having said that, the court imposed an actual sentence of 188 months, 33 months above what the probation office determined was the proper level, the low end of that proper level. And we respectfully submit that the sentencing Guidelines should apply everywhere in America, even in Richmond, and that this departure, you know, was inappropriate, Your Honor. And we base this on two points. One, the prosecutor asked for an upward departure to criminal history category Roman numeral four from two. The court actually departed to Roman numeral five, which was more, obviously, that asked for. And in doing so, the court counted three stale ancient convictions. My client had been convicted 25 years before when he was 15, 16 and 17 years old of three felonies that the court, which were excluded under the rules in effect, excluded because of the Guidelines. And we respectfully submit that the court abused its following the law and leaving them out because they were excluded. And moreover, that in applying the parsimony principle in the Section 3553 factors, the sentence was substantially unreasonable. And in this case, we rely almost exclusively upon the decision of this court and the Dennis Howard case, which we, you know, quote from extensively. I realize, Judge Moss, I'm preaching to the choir since you were on the panel that decided that that case. But we base this in small part upon the fact that the departure was more than the prosecutor asked for. That's 1% of our argument. Although to be fair, but the amount of time was less than the prosecutor. Yes, exactly, Your Honor. The amount of time was less than the prosecutor asked for, even though the criminal history category was higher because the ranges overlapped. Much, much more importantly, and the primary reason for this appeal is that the prior convictions occurred when my client was a juvenile. And the court said it much more articulately than I could ever hope to. If the court would just bear with me for a moment while I quote several things from the decision. From page 26, the court in the Howard decision said, the district court abused its discretion by focusing too heavily on Howard's juvenile criminal history in its evaluation of whether it was appropriate to treat Howard as a career offender and its weighing of the Section 3553A factors after having done so. And if I can skip ahead to page 28, this court said, the Supreme Court has recognized in the sentencing context the diminished capability of juvenile offenders, giving their lack of maturity, vulnerability to social pressures, and malleable identities, quoting Miller v. Alabama, which was the case holding that a life sentence without possibility of parole for juveniles was unconstitutional. And finally, if I can go to the next page, the court found it is difficult even for expert psychologists to differentiate between the juvenile offender whose crime reflects unfortunate transient immaturity and the rare juvenile offender whose crime reflects irreparable corruption. And the court further goes on to say, youth is a mitigating factor derived from the fact that the signature qualities of youth are transient. As individuals mature, the impetuousness and recklessness that may dominate in younger years can subside. And finally, the Supreme Court's jurisprudence of youth recognizes that juveniles who produce the same harms as adults are not their And, you know, we respectfully submit that the instant case is exactly like Howard. There may be a difference of degree and that we acknowledge that Mr. Howard was sentenced to life without parole and my client was not, but it's not a question of degree. Is that difference in degree extremely significant when you're talking about whether the sentence was substantively reasonable or not? You don't suggest, do you, that Howard overruled prior Fourth Circuit precedents? Well, Your Honor, I respectfully submit that Howard carved out a niche where the prior convictions were committed when a person was a juvenile. Right. And that makes them different from all the other jurisprudence from the circuit addressing this issue and the prosecutor says... No, no, no, no, no. How about Myers? Well, Your Honor, we respectfully submit that... It was the same thing, wasn't it? Well, not exactly... It was pretty close. Pretty, pretty, pretty close, Your Honor. But my point is here, the prosecutor says time and time again, that it's a certainty that my client's going to commit other crimes and the public needs to be protected from him for the extra 33 months that are involved here. And considering how young he was when he committed these three prior felonies, that's not something that can be predicted with that kind of a precision. But your position isn't that the sentencing guidelines prevents counting those felonies, is it? Because it clearly doesn't prevent it. I'd say, first of all, they shouldn't have been counted. Well, take your position to Congress or to the commission. We don't do should. We do what the law permits. And the law permits it, doesn't it? But secondly, if they are counted, when we apply the parsimony principle and the 3553A factors and stuff, too much weight was placed upon them because he was only a kid when they happened. His capabilities weren't fully formed. His psyche wasn't developed. For all the other reasons that this court said in the Howard case, we submit that the sentence was substantially unreasonable. That's it. Thank you, Your Honor. Counsel, ask, please. You don't have a procedural unreasonableness claim, do you? No, sir, Your Honor. So you think that there's a difference between being able to count them versus being able to consider them? Because that's what the district court did. It counted them and then jumped straight to that level, didn't it? Yes, sir, Your Honor. Right. It didn't just consider it in terms of the 3553 factor. Is that procedurally correct? Your Honor, I had the Lynn case here before, and when I concede that Judge Payne complied with the Lynn procedure for setting out the factors and articulating the reasons, we just submit that the end result was unreasonable at the end. But we don't quarrel with the procedures that were followed to get to that point, just with the result. Thank you, sir. Good morning. May it please the Court, Angela Miller for the United States. Your Honors, in the 27-year time period from the age of 15 to the age of 42, the defendant in this case, despite his extensive criminal history that he brought to the court, he was assessed just three criminal history points, placing him in criminal history category two. The question is whether the district court abused its discretion when elected to impose a sentence that was 20 months, 15 percent, above the advisory guideline range to take into account the violent and continuous criminal history that this defendant has. In this case, the defendant is not contending that there was procedural error, so the analysis is limited only to substantive reasonableness. I'd like to talk about the Kelo's in a moment, but I think if I could touch first on Howard and talk about how this case is so very different from Howard. First and foremost, we're talking about a sentence of life plus five in Howard for a man who had a guideline range of 120 to 121 months, plus five years for a firearm. Here we're talking about a sentence that had a guideline range of 135 to 168 months, and a sentence of 188 months was imposed. That is night and day. It's not even comparable. I would argue to the court, if I could have just a moment, the defendant in Howard had an upward departure where he was viewed as a de facto career offender. He went to criminal history category six from a level 28 criminal history category three to a criminal history category six. In this case, the defendant had, if the court had only departed up one criminal history category, 188 months was an option for the court. If he had departed two criminal history categories, 188 months was an option. If he had departed to a third criminal history category, 188 months was an option. Even if he had only said, you know what, I'm going to give him three points for a crime that he committed when he was 17 years, 355 days old, 10 days short of his 18th birthday, 17 years, 355 days, he had only given him three criminal history points for that, we would be in the same area. He would have, Judge Payne would have had 188 months as an option to impose in this case. The defense argues, counsel argues that the United States asked for a sentence that was lower, but as Judge King pointed out, the United States asked for the imposition of a sentence of 192 months and the court imposed a lower sentence of 188 months. So again, this case is differentiated significantly from Howard, where the prosecutor had asked for a much lower sentence than the court imposed in that case. The judge went through all of the factors and found that the defendant's criminal history, but also the fact that he was incarcerated for a significant period of time where he could not commit crimes, was a very, very important consideration in this case and that the criminal history and the likelihood that he would commit other crimes. That same rationale would exist for if he was ill, if he was stricken with meningitis and for five years he was laid up, he'd also be considered to be, well, we don't know, he was sick for five years, we don't know what he would have done. Same thing, right? Isn't that the same logic? I don't think that someone having meningitis and not being able to commit crimes and someone being incarcerated for having committed a crime and not committing crimes is the same thing. Why is that different? Because one is... It's the same thing. The whole idea is that we're not going to give you credit for that because you could not commit crimes. One is because of incarceration, the other is because of illness. It's the same logic, counsel. How is that reasoning different? Your Honor, I respectfully would point out that, as I said in my opening, in the 27-year time period between the age of 15 and the age of 42, he was either incarcerated or being watched by a probation officer and continually committed crime. I heard you and I understand that. You're going to tell me logically there's any difference? Maybe you want to excuse somebody who's sick versus somebody because of that situation, but the logic of not giving him credit is the same. This was a period where you could not have committed a crime. Therefore, we don't know whether you were informed or not. It's the same thing. I understand what the Court is saying, but on the one hand, he's incarcerated because of something he proactively did. On the other hand, someone has meningitis because they became sick. It's not something that happened to them as a result of their actions. I think that's an extremely different scenario. We should talk maybe about what he did when he was 15, 16, and almost 18 years old. When he was 15 years old, he was involved with a gang of 10 others where they would steal their helmet and the moped that the person was driving. The person was cut. There was a knife involved. Not just a few months later, he was charged with first-degree robbery. We don't have the details of that case. Then, in the case when he was a few weeks shy of his 18th birthday, he shot two men. He committed crimes of violence repeatedly. When he got sentenced to between 5 and 10 years for that shooting that he did, he got out. Within two years and four months of being taken off of probation, he was charged with a conspiracy in New York to distribute large quantities of cocaine. He was right back to his criminal activity. Then, he's taken off probation. Only two years later, he's involved in a conspiracy here in Richmond, Virginia, to distribute 7 kilograms of cocaine. The criminal history category was a reasoned decision by Judge Payne to say, that is not representative of what you bring to this court. A criminal history category of two is not the correct place to start here. This is taken out of the heartland. This needs to go into a higher criminal history category to reflect, and he went through the 3553A factors, the seriousness of the offense, the need to deter you, the need to deter others from engaging in these kinds of behaviors, and so forth. I think Judge Payne did a very deliberate, thoughtful, and reasoned approach, and felt not only that the fact that he was incarcerated and couldn't commit crimes was a factor, but also all of the totality of the history that this gentleman brought to the court was important. Well, we're not getting into the approach because counsel and no one else has raised that. Of course. The approach was very simple. He just counted all the stale ones and gave them the exact criminal history category that that would be. Yes, Your Honor, but wouldn't it be significant to you that if he had only counted one, that the 188-month sentence was an option for him? If he had only gone from criminal history category two to criminal history category three, that 188 months incarceration was available to Judge Payne? If he had only added the three points for the crime that he committed when he was just short of his 18th birthday, 188 months was an option that would have been available under that guideline range. So the fact that he went up either one, two, or even three, 188 is in all three of those categories. Your Honor, if it's procedurally unreasonable, we don't get to substantive unreasonable. I understand. I understand, Your Honor. I'm just pointing that out. I'm just trying to find out what substantive reasonableness is. If the Supreme Court gives us that guideline without any guidelines, what does it mean? I mean, I guess Judge, really, based on what you said about this person, could have doubled the time and would be doing the same thing. Rather than 15%, it could be 50%. Well, but he didn't. And if we look at Myers, Myers got 14 years more than McCoy, 360 months. Lawrence, Lawrence got 262 months, six years more than McCoy. Cash, 210 months, 22 months more than McCoy. And Howard, life plus five. So those are very different. And I would also just point out that the defendant has some ability to reduce his sentence that's in his hands. One is if he behaves well, he gets 15% off his sentence. And the other is, the Judge Payne ordered him to participate in the 500-hour drug treatment program, which if he does it, he'll get a year off his sentence. So the net effect of the 20 months is five months. Excuse me. Yes, ma'am. Would the government object if he made a 3582 motion to take advantage of the amendment? If he files a 3582, he'd still be in the 188-month category. He could be, but the court would have discretion. And I'm sure he's going to file the 3582, and we'll definitely address that at that time and see where it falls. But we're not going to say he can't file a 3582 if that's what the court says. But you're not saying also that you would concur in any reduction? Well, I don't know what the reduction they would be asking for would be to say whether or not I would. I mean, I just don't know what they would ask for. If I may address just very briefly the 7-kilogram argument. First, the jury found that he had distributed between 500 grams and 5 kilograms of cocaine. And he had been enhanced, so he was looking at a 10-to-life sentence in this case for his prior drug trafficking activity. The court agreed with the reasoning that the quantity of drugs that were found by the jury set the statutory maximum, but that did not affect the ability for the court to consider for purposes of relevant conduct the quantity. And we put on evidence at the sentencing hearing to show that there were actually 7 kilograms that were involved in the conspiracy aspect of it. There were 3 kilograms on the date of the arrest, but 7 kilograms in the conspiracy. And if I could just have a moment to explain in spring of 2013, the defendant delivered a kilogram of cocaine to Tamara Williams who delivered it to his customer. At the end of the summer of 2013 and into the early fall of 2014, the Tamara Williams ordered another 3 kilograms for a customer. And that was delivered to the customer. So the conspiracy is complete at the time of the agreement. It has nothing to do with delivery or the return. This is not Nordstrom's. This is drug trafficking. So those 3 kilograms are counted, so that's 4. And then in November of 2013, a confidential informant orders up 3 kilograms of cocaine from Tamara Williams. Tamara Williams gets those 3 kilograms from Delayed McCoy, and there are your 7 kilograms. There is no double counting. That is not even an issue that wasn't even raised by the defense attorney. The defense attorney at trial and at sentencing merely raised whether or not the jury's finding would allow for relevant conduct to be considered or not by the court. I think we understand your position. Okay, thank you, Your Honor. I think there was one other issue if the court needed me to address it. Um, actually, I think that would be, I think we talked about Amendment 782 and the 7 kilograms. So if there are no further questions, I thank you for your time. Thank you very much. Mr. English, do you have rebuttal? Yes, Your Honor. Can I make two points? Your Honor, the whole idea that a person can't commit crimes while they're in prison is ludicrous. I can't tell you how many times I before they closed that facility and aggravated assault and murder and other cases. So being in prison does not prevent someone from committing crimes. I thought so too. I think it's more, it's more, well, a person who's sick, they really can't do anything. But the person in prison could do a whole lot of things. Yes, sir. Unfortunately, and do many of them. Yes, sir. Exactly, Your Honor. And the other thing, the prosecutor indicated that my client is eligible for the 500-hour drug program offered by the Bureau of Prisons that would take a year off the sentence if he completed it, Your Honor. I respectfully submit that he's not eligible because he has a prior conviction for a crime of violence. And that would exclude him from participating in that program. So he has no possibility despite Judge Payne's recommendation to have that relief on the other end. And I would say if the court were to set aside the sentence in this case and remand it, we would ask that the court remand it to a different judge to take a fresh look at it. You got any authority for that? For throwing the judge out? No, sir. Your Honor, I submit it's of good policy when a case is Okay. We understand your position. Thank you very much. Mr. English, I understand that your court appointed court very much appreciates your efforts on behalf of your client. We couldn't do cases without the diligence of court-appointed lawyers.
judges: Diana Gribbon Motz, Robert B. King, Roger L. Gregory